**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KINGSLEY OGBOGU,** | § | |
| **Plaintiffs,** | § | |
| **vs.** | § | **Civil Action No.  3:18-CV-1912-K-BH** |
| | § | |
| **JONI NAVIN, DEPARTMENT OF** | § | |
| **LABOR,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is *Defendants' Motion to Dismiss and Brief in Support*, filed December 10, 2018 (doc. 20).  Based on the relevant filings and applicable law, the motion should be **GRANTED**.

**I. BACKGROUND**

On July 25, 2018, Kingsley Ogbogu (Plaintiff) sued  his former employer, the Department of Labor (DOL), and its attorney, Joni Navin[2] (Attorney) (collectively, Defendants), for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), and for disability discrimination, retaliation, and denial of reasonable accommodation under the Americans with Disabilities Act of 1990 (ADA).  (docs. 3 at 1; 11 at 1-2, 5, 7-8, 12.)[3]  He also asserts a claim against DOL for its alleged breach of a settlement agreement.  (docs. 3 at 1; 11 at 12.)  He seeks a promotion to a position he was allegedly supposed to have received and "monetary compensation for [his] mental pain [and] anguish.  (doc. 11 at 13.)

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] The motion to dismiss clarifies that Plaintiff is likely referring to Navin Jani, an attorney that previously represented DOL at the administrative level.  (doc. 20 at 15.)

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiff is an African-American male who suffers from cerebral palsy, which substantially limits his motor skills in all areas. (*Id*. at 2, 7.) He uses a scooter, wheelchair, and crutches to move around, requires assistance at times to dress and prepare meals, and needs to "hold on to something stationary" when he showers. (*Id*. at 7.) He worked for DOL as an administrative specialist in the Employee Benefit Security Administration (EBSA) division from June 3, 2012 until September 28, 2012. (*Id*. at 4, 11.) Plaintiff requested accommodations, including voice dictation software to help with typing, a wider workspace to maneuver his scooter/wheelchair, and a chair with proper lumbar support for his spine, but "management refused to honor [his] request[s]." (*Id*. at 3-4, 8.) He also alleges that due to the severity of his disability, he was discriminated against by multiple individuals in different departments of DOL, including the deputy director, lead administrator, and human resources (HR) director within his division. (*Id*. at 3.) Although he reported this discrimination, nothing was done. (*Id*. at 11.)

Sometime between 2012 and 2013, Plaintiff applied with the DOL for a claims investigator position at the GS-7 level, but was denied this "promotion," and the position was ultimately "given to a white female . . . ." (*Id*. at 2.) He alleges that he was denied this promotion "solely because of [his] severe disability . . . and [his] race . . . ." (*Id*. at 3.) Plaintiff subsequently filed two complaints with the Equal Employment Opportunity Commission (EEOC) alleging discrimination. (*Id*. at 16.)[4]

On August 24, 2015, before the EEOC reached a decision on his complaints, Plaintiff and DOL entered into a settlement agreement (the Agreement). (*Id*. at 16-17; doc. 21 at 3-8.) It was "a complete and binding settlement of all of [Plaintiff's] claims against the [DOL], . . . and any and all

---

[4] Although Plaintiff alleges that he previously filed a charge of discrimination with the EEOC, and the decision from his administrative appeal shows that he filed two separate complaints, it is unclear when he filed his charge(s) of discrimination. (*See* doc. 11 at 1, 16.)

other actual or potential claims that were raised or could have been raised by [him] against the [DOL] through the date" of the Agreement's execution. (doc. 21 at 3.) Under the terms of the Agreement, DOL agreed to grant Plaintiff priority consideration for any DOL job in the Dallas/Fort Worth area "for which he [was] a qualified applicant and for which [he] applie[d]," and for which he fulfilled "all the requirements required by the application process." (docs. 11 at 17; 21 at 5-6.) Additionally, Plaintiff was required to "comply with the terms of and submit the letter attached" to the Agreement along with his application. (*Id*.) Priority consideration, as defined in the Agreement, meant that Plaintiff's resume and application package would be referred "to the selecting official prior to issuance of the certificate of eligibles." (*Id*.) As a result of the Agreement, on December 17, 2015, the EEOC dismissed Plaintiff's claims. (doc. 11 at 17.)

Plaintiff alleges that after June 1, 2015, when the Agreement was initially drafted, he applied to at least seven job announcements with DOL but was only interviewed for one position, which he claims was an accident because the position had been filled weeks before his interview. (*Id*. at 6, 12.) On September 23, 2015, Plaintiff inquired about the status of job postings DE-15-DAL-MSHA-SC-0063 and MS-15-DAL-MSHA-SC-280 (2015 Job Postings), and he was informed that both job announcements were cancelled and would not be posted again. (*Id*. at 27-28.) On May 18, 2016, Plaintiff inquired about job posting MS-16-DAL-EBSA-132 (2016 Job Posting), and he was notified that the job announcement was cancelled in April because it was filled through an internal reassignment. (*Id*. at 23-24.) He then received an email on June 7, 2016, which noted that he had been interviewed for the 2016 Job Posting and stated that he would be notified once a final decision was reached. (*Id*. at 25.) He alleges that he was "given false and misleading information" about these job postings in retaliation for filing his claims with the EEOC. (*Id*. at 5-6, 9.) He asserts that

DOL "refused to comply [with] . . . [and] is in breach" of the Agreement, and that Attorney violated his rights because he "represents the agency and their actions."  (*Id*. at 2, 9, 12.)

On March 10, 2016, Plaintiff appealed the dismissal of his EEOC complaint to the EEOC's Office of Federal Operations (OFO), challenging the validity of the Agreement and alleging that DOL had breached it.  (*Id*.)  On April 20, 2018, OFO concluded that it could not determine whether DOL complied with the Agreement based on the record before it, and remanded the matter to DOL "for a supplemental investigation for evidence showing whether it complied with the settlement agreement."  (*Id*. at 18-19, 21.)  The OFO's decision informed Plaintiff of his right to file a civil action, and that the filing of a civil action would terminate the administrative processing of his complaint.  (*Id*. at 20-21.)  Plaintiff then filed this lawsuit on July 25, 2018.  (doc. 3.)

On December 10, 2018, Defendants moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim.  (doc. 20.)  On December 27, 2018, Plaintiff filed a motion that was construed as his response, and Defendants did not file a reply.  (docs. 25; 27.)

## II. RULE 12(b)(1)

Defendants first move to dismiss some of Plaintiff's claims under Rule 12(b)(1) for lack of subject-matter jurisdiction.  (doc. 20 at 9-11.)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912,

916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or a by a court on its own initiative at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id*. Facial attacks are usually made early in the proceedings. *Id*. "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which

are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, in support of their motion to dismiss, Defendants provide a copy of the Agreement and a Declaration of Jehad Ali (Ali Declaration), an Equal Opportunity Specialist with the DOL's Civil Rights Center. (doc. 21.) Their motion therefore represents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations. "Because Plaintiff does not contest [Defendants'] proffered evidence, however, there are no disputed facts to resolve." *McClain v. Bueschel*, No. 3:09-CV-1721-M, 2010 WL 742452 at *2 (N.D. Tex. Mar. 2, 2010).

A.    <u>Exhaustion</u>

Defendants seek dismissal of Plaintiff's retaliation claims related to the 2015 job postings for failure to exhaust administrative remedies. (doc. 20 at 9-10.)

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Before an individual can pursue a Title VII claim in federal court, she must timely exhaust her available administrative remedies.

6

*Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). This typically means that the complainant must file a charge with the EEOC and receive a "right to sue" letter before filing suit. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg College*, 535 U.S. 106, 109 n.1 (2002).

The Rehabilitation Act[5] provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Plaintiffs are subject to the same procedural constraints under the Rehabilitation Act, such as administrative exhaustion, that are set forth in Title VII. *See* 29 U.S.C. § 794a; *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981).

In *Davis v. Fort Bend Cty*, 893 F.3d 300 (5th Cir. 2018), the Fifth Circuit recognized a split in the circuit "on whether Title VII's administrative exhaustion requirement is a jurisdictional requirement that implicates subject matter jurisdiction or merely a prerequisite to suit (and thus subject to waiver and estoppel)." *Id.* at 303 (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006)); *see also Baker v. McHugh*, 672 F. App'x 357, 360–61 (5th Cir. 2016) (per curiam). It made clear, however, that exhaustion is a condition precedent rather than a jurisdictional prerequisite to maintaining a Title VII action. *Id.* at 305–07. In the Rehabilitation Act context, an employee complaining of discrimination or retaliation must similarly exhaust his administrative remedies as

---

[5] Although Plaintiff sues under the ADA, Defendants consider his disability discrimination claims to have been asserted under the Rehabilitation Act. (docs. 3 at 9; 20 at 1, 7.) Federal employees are not covered by the ADA, and the Rehabilitation Act is their exclusive remedy for disability discrimination. *See* 42 U.S.C. § 12111(5)(B); *Cavada v. McHugh*, 589 F. App'x 717, 718 (5th Cir. 2014); *Carter v. Ridge*, 255 F. App'x 826, 829 (5th Cir. 2007). The rights and remedies afforded under the statutes are almost entirely the same, *Bennett-Nelson v. Lousiana Bd. of Regents*, 431 F. 3d 448, 454 (5th Cir. 2005), and the cases interpreting either section are applicable to both, *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

a precondition to bringing an action in federal court. *Smith v. Potter*, 400 F. App'x 806, 811 (5th Cir. 2010) (quoting *Pacheco*, 448 F.3d at 788); *see also Bailey v. Napolitano*, No. 3:11-CV-1110-L, 2012 WL 1658790, at *5 (N.D. Tex. May 11, 2012) (finding that exhaustion of administrative remedies for Title VII and Rehabilitation Act claims was a condition precedent).

When the failure to exhaust is a condition precedent rather than a jurisdictional prerequisite, a motion to dismiss based on such failure is properly filed under Rule 12(b)(6) rather than Rule 12(b)(1). *See Gates v. City of Dallas, Tex.*, No. 3:96-CV-2198-D, 1997 WL 405144 at *1 (N.D. Tex. July 15, 1997); *see also Mishra v. Bank of America*, No. 3:14-CV-1521-M, 2016 WL 944133 at *6 (N.D. Tex. Feb. 16, 2016), *adopted by* 2016 WL 1060311 (N.D. Tex. Mar. 11, 2016) (explaining that exhaustion of an EEOC charge is a condition precedent to bringing suit on an employment discrimination claim under Title VII). Accordingly, Defendants' motion to dismiss for failure to exhaust administrative remedies will be considered under Rule 12(b)(6).

## B.    Sovereign Immunity

Defendants next assert that Plaintiff's breach of contract claim against DOL should be dismissed because "[t]he United States has not waived its sovereign immunity over claims alleging breaches of settlement agreements." (doc. 20 at 10-11.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). The terms of the consent or waiver define the

8

jurisdictional boundaries to entertain the suit.  *Meyer*, 510 U.S. at 475.  In general, the scope of a waiver of sovereign immunity is strictly construed "in favor of the sovereign."  *Gomez–Perez v. Potter*, 553 U.S. 474, 491 (2008).  Plaintiffs have the burden to show an "unequivocal waiver of sovereign immunity."  *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

It is well-established that an employee's "damages claim for breach of [an employment] settlement agreement is a breach of contract claim against the United States."  *Patterson v. Spellings*, 249 F. App'x 993, 996 (5th Cir. 2007); *Guidry v. Halliburton Geophysical Servs.*, 976 F.2d 938, 940 (5th Cir. 1992) (stating that a "settlement agreement is a contract"); *see Charles v. McHugh*, 613 F. App'x 330, 333 (5th Cir. 2015) (per curium) (citing cases) (determining that an employment discrimination settlement agreement was a contract).  The Tucker Act waives the sovereign immunity of the United States for contract claims.  28 U.S.C. § 1491(a)(1).  It provides, in relevant part, that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ."  *Id.*  Under the Little Tucker Act, district courts have concurrent jurisdiction over claims upon express or implied contracts "not exceeding $10,000 in amount[.]"  28 U.S.C. § 1346(a)(2).  Consequently, when a plaintiff seeks a judgment in excess of $10,000 on a contract with the United States, "the Court of Federal Claims has exclusive jurisdiction."  *Patterson*, F. App'x at 996 (citing *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.)); *see Hansson v. Norton*, 411 F.3d 231, 232 (D.C. Cir. 2005) (holding that a claim for breach of a Title VII settlement agreement was a contract claim, and claims exceeding $10,000 belonged with the Court of Federal Claims under the Tucker Act).  Plaintiffs bear "the burden of alleging that their claims

do not exceed the $10,000.00 jurisdictional limit established by the Tucker Act." *Enplanar, Inc. v. Marsh*, 829 F. Supp. 848, 851 (S.D. Miss. 1992) (citing cases), *aff'd*, 25 F.3d 1043 (5th Cir. 1994).

Here, Plaintiff sues for breach of contract based on the settlement agreement between him and DOL. (*See* doc. 11 at 12.) Although he seeks a promotion to a position he alleges he was supposed to have received and "monetary compensation for [his] mental pain [and] anguish," he failed to plead the specific amount of damages he seeks. (doc. 11 at 9-10, 13.) He also did not respond to Defendants' argument that "[t]here is no jurisdiction over the breach-of-contract claim" based on sovereign immunity. (*See id*; docs. 20 at 10-11; 25.) Plaintiff, "as the party seeking to invoke this Court's jurisdiction[,] bears the burden of proving jurisdiction lies, . . . and he has failed to meet that burden here." *Maxie v. United States Postal Serv.*, No. 3:08-CV-1688-B, 2009 WL 2486034, at *3 (N.D. Tex. Aug. 13, 2009) (internal citation omitted); *see also St. Tammany Parish*, 556 F.3d at 315 (the plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity). Because he has failed to meet his burden to show an "unequivocal waiver of sovereign immunity," his breach of contract claim against DOL should be dismissed for lack of subject-matter jurisdiction.[6] *See Enplanar, Inc. v. Marsh*, 25 F.3d 1043, No. 93-7633, 1994 WL 261088, at *2 (5th Cir. June 2, 1994) (affirming the district court's finding that it lacked jurisdiction under the Tucker Act because the action sought "an unspecified amount of monetary damages, thus rendering it fatally defective."); *Mata v. McHugh*, No. SA-08-CA-00709-JWP, 2016 WL 8838873, at *5 (W.D. Tex. Jan. 20, 2016) (finding lack of subject-matter jurisdiction where the only issue was whether the government agency breached an employment settlement agreement by not transferring/reassigning

---

[6] Because Plaintiff's breach of contract claim should be dismissed on this basis, it is unnecessary to reach Defendants' alternative arguments for dismissal of that claim under Rule 12(b)(6). (*See* doc. 20 at 14-15.)

the plaintiff "to an equivalent position for which he was qualified"); *see also Enplanar*, 829 F.3d at 852–53 (dismissing claims for lack of subject-matter jurisdiction where the plaintiff failed to allege damages within the jurisdictional limits of the Tucker Act).

### III. RULE 12(b)(6)

Defendant also moves to dismiss Plaintiff's remaining claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 20 at 11-15.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.

 "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inap-

plicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-duct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007); *Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008). If "matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v.*

*Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch*, 533 F.3d at 293–94 (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint").  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Accordingly, documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached documents to his answers to a magistrate judge's questionnaire,[7] including a letter from the EEOC regarding his appeal, the EEOC's decision on appeal, and emails between him and DOL employees.  (doc. 11 at 15-28.)  Because these documents are attached to his answers, which constitute the first amendment to the complaint, they are considered part of the pleadings.  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498. Defendant similarly attached to their motion to dismiss a copy of the Agreement.  (doc. 21 at 3-8.) Because the Agreement is referenced in Plaintiff's complaint and questionnaire answers, and is central to his claims, it is considered part of the pleadings.  *See Collins*, 224 F.3d at 499.

Defendant also attached with its motion to dismiss the Ali Declaration.  (doc. 21 at 9-10.)

---

[7] Plaintiff's answers to the a magistrate judge's questionnaire constitute an amendment to the complaint.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

13

This document was not referenced in Plaintiff's complaint or answers to the questionnaire and is not

a matter of public record, so it is not part of the pleadings for purposes of the 12(b)(6) motion. *See*

*Hearn v. Deutsche Bank Nat. Trust Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at \*4 n.3 (N.D.

Tex. Aug. 15, 2014) (considering documents attached to a motion to dismiss as part of the pleadings

only as long as they were central to the plaintiff's claim and referenced in the complaint). Because

the Ali Declaration is not part of the pleadings for purposes of the 12(b)(6) motion, and is not being

considered for purposes of this motion, it is unnecessary to convert the motion to dismiss into a

summary judgment motion.

**A.**       **Proper Party Defendant**

Defendants argue that the claims against them should be dismissed, and that the Secretary

of Labor should be substituted as the defendant for Plaintiff's discrimination and retaliation claims.

(doc. 20 at 15-16.)

The proper defendant in a Title VII action by an employee of a federal agency is the "head

of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); *Lamb v. United States*

*Postal Service*, 852 F.2d 845, 846 (5th Cir. 1988) ("42 U.S.C. § 2000e-16(a)-(c) . . . provides the

exclusive remedy for the employment discrimination claims of federal employees."). "The

Rehabilitation Act adopts the procedures in § 2000e-16(c)." *Raymond v. Department of the Army*,

No. SA-09-CA-00279-OLG, 2009 WL 10699493, at \*3 (W.D. Tex. Oct. 15, 2009) (citing 29 U.S.C.

§ 794a(a)(1)). As the head of DOL, Acting Secretary of Labor Patrick Pizzella, in his official

capacity, is the only proper defendant in this employment action. *Willy v. Admin. Review Bd.*, 423

F.3d 483, 493 n.42 (5th Cir. 2005) (citing  29 U.S.C. § 551) (recognizing that the Secretary of Labor

is the head of DOL). Accordingly, the employment claims against Defendants should be dismissed

with prejudice, and the Acting Secretary of Labor should be substituted as the defendant in this action for Plaintiff's Title VII and Rehabilitation Act claims.  *See Raymond*, 2009 WL 10699493, at *3 (dismissing claims against improper defendants and substituting the proper defendant, rather than dismissing the case altogether); *Baney v. Gonzales*, No. 3:06-CV-2064-L, 2007 WL 1944462, at *6 (N.D. Tex. June 27, 2007) (dismissing employment claims against improper defendants and maintaining the action against the proper defendant).

## B.      <u>Failure to Exhaust</u>

As noted, Defendants argue that Plaintiff's retaliation claims under Title VII and the Rehabilitation Act related to the 2015 Job Postings should be dismissed because he did not file an administrative charge for those claims.  (doc. 20 at 9-10.)[8]

As discussed, an individual must exhaust his administrative remedies by filing a charge with the EEOC and receiving a right to sue letter before he can pursue claims under Title VII or the Rehabilitation Act in federal court.  *See Taylor*, 296 F.3d at 378–79; *Prewitt*, 662 F.2d at 304. Courts have routinely held that a plaintiff's complaint is subject to dismissal under Rule 12(b)(6) when the plaintiff "fails to allege exhaustion of administrative remedies."  *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979); *see Johnson v. U.S. Postal Serv.*, No. 3:15-CV-1081-L-BK, 2016 WL 791076, at *1–2 (N.D. Tex. Jan. 27, 2016) (finding that plaintiff's Title VII claim should be dismissed for failure to state a claim rather than for lack of jurisdiction where the plaintiff failed to allege exhaustion of administrative remedies); *Carr v. United Reg'l Health Care Sys., Inc.*, No. 4:06-CV-194-A, 2006 WL 2370670, at *2 (N.D. Tex. Aug. 16, 2006) (determining that claims under the

---

[8] Defendants concede that Plaintiff filed an administrative charge for his retaliation claim related to the 2016 Job Posting.  (doc. 20 at 10.)

ADA and the Rehabilitation Act were subject to dismissal "because [the plaintiff] has failed to allege that he exhausted his . . . administrative remedies . . . ."); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 471 (N.D. Tex. 2003) (dismissing the plaintiff's claim under Rule 12(b)(6) where the plaintiff alleged that he filed a charge but failed to allege that a right to sue letter was issued or received); *compare Vernon v. Tangipahoa Par. Sch. Bd.*, No. 15-2083, 2016 WL 3144383, at *2 (E.D. La. June 6, 2016) (finding that, even though not alleged in her complaint, the plaintiff exhausted her administrative remedies by producing her EEOC charge and right to sue letter in response to a motion to dismiss under Rule 12(b)(6)).

Here, Plaintiff alleges that he filed a charge of discrimination with the EEOC on March 3, 2016. (doc. 11 at 1.) He did not attach a copy of the charge, however, and it appears he is referring to the appeal he filed with OFO based on DOL's alleged breach of the Agreement. (*See id.* at 1, 15-17.) Additionally, he does not allege "that the EEOC issued a right-to-sue letter or that he ever received such a letter" regarding his retaliation claims related to the 2015 Job Postings, and he concedes that the EEOC did not issue a final decision concerning his charge of discrimination. He also has not addressed or controverted Defendants' argument that he failed to exhaust his administrative remedies in response to their motion to dismiss. Because he has failed to allege that he has met the precondition for filing suit by exhausting his available administrative remedies, his Title VII and Rehabilitation Act claims related to the 2015 Job Posting should be dismissed without prejudice.[9] *See Hoffman*, 596 F.2d at 685 ("A judicial complaint that fails to allege exhaustion of

---

[9] "When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)).

administrative remedies . . . is properly subject to dismissal."); *Carr*, 2006 WL 2370670, at *2

(dismissing *pro se* plaintiff's claims under the Rehabilitation Act for failure to allege exhaustion);

*Shabazz*, 300 F. Supp. 2d at 471 (dismissing *pro se* plaintiff's Title VII claim without prejudice

where the plaintiff failed to allege exhaustion of administrative remedies in his complaint).[10]

## C.   Waiver

Defendants next move to dismiss Plaintiff's Title VII claim for race discrimination and his

Rehabilitation Act claims for disability discrimination and failure to provide reasonable

accommodations on grounds that he "settled and waived" those claims by entering into the

Agreement.  (doc. 20 at 11-12.)

Voluntary settlement of employment claims is encouraged by the courts and is binding on

both parties. *Jackson v. Widnall*, 99 F.3d 710, 714 (5th Cir. 1996) (citing 29 C.F.R. § 1613.217(b)

(1995)); *Loperena v. Johnson*, No. 1:16-CV-00011, 2017 WL 8793750, at *4 (S.D. Tex. Mar. 13,

2017) (citing *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912–12 (5th Cir. 2013)) ("Settlement

agreements are enforceable contracts between parties, subject to the rules of contract interpretation);

*see Charles*, 613 F. App'x at 333 (citing cases); *Guidry*, 976 F.2d at 940.  "Settlement agreements

in which a federal employee agrees to waive discrimination claims in exchange for corrective

agency action have been upheld in federal courts."  *Loperena*, 2017 WL 8793750, at *5 (citing

cases).  Once waived, the employee cannot later seek relief on those claims because "[a]llowing one

party to renounce an agreement and sue for additional relief would undermine our longstanding

policy of encouraging settlement, thereby creating a disincentive to the amicable resolution of legal

---

[10] Because Plaintiff's retaliation claims related to the 2015 Job Postings are subject to dismissal for failure to exhaust, it is unnecessary to reach Defendants' argument that Plaintiff also failed to state a claim.  (*See* doc. 20 at 12-13.)

disputes and defeating the purposes of [T]itle VII." *Jackson*, 99 F.3d at 714; *see also Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (noting that Title VII incorporates a strong preference for the voluntary settlement of employment discrimination claims). Moreover, it is well-settled that an alleged breach of a settlement agreement does not revive an employment cause of action that arose prior to the date of that agreement. *Boone v. Gibson*, No. 3:07-CV-744-L, 2008 WL 4791541, at *2 (N.D. Tex. Oct. 31, 2008); *see Wiley v. Paulson*, 329 F. App'x 512 (5th Cir. 2009) (per curium) (agreeing with the district court that "while [the] [d]efendants' alleged failure to perform their settlement obligations might give [the] [p]laintiff a claim for breach of contract, it did not revive her settled claims."); *Lee v. Accenture LLP*, No. H-18-2422, 2018 WL 6435635, at *2 (S.D. Tex. Dec. 7, 2018) (citing cases) ("Courts have uniformly held that a plaintiff who 'voluntarily settled her claims [ ] may not renounce her settlement agreement to bring suit for additional relief. If [the] [d]efendants have not fulfilled their obligations under the settlement agreement, [the] [p]laintiff may have a claim for breach of contract.'").

Here, Plaintiff alleges that he was denied reasonable accommodations and suffered discrimination during his employment with DOL in 2012, and that sometime between 2012 and 2013, he was denied a promotion due to his disability and his race. (*See* doc. 11 at 2-4, 8, 11.) On August 24, 2015, before the EEOC reached a decision on his two complaints regarding those events, Plaintiff and DOL entered into the Agreement to settle them. (*Id.* at 16-17; doc. 21 at 3-8.) The Agreement was "a complete and binding settlement of all of [Plaintiff's] claims against [DOL], . . . and any and all other actual or potential claims that were raised or could have been raised by [him] against [DOL] through the date" of the Agreement's execution. (doc. 21 at 3.) Plaintiff voluntarily and knowingly accepted the terms of the Agreement, and he does not challenge its validity. (*Id.* at

7; *see* docs. 11; 25.)  By entering the Agreement, Plaintiff "voluntarily settled [his] claims and may not renounce [his] settlement agreement to bring suit for additional relief."  *Martin v. Copiah Lincoln Cmty. Coll.*, 667 F. App'x 499, 501 (5th Cir. 2016) (per curium); *see Jackson*, 99 F.3d at 714; *Loperena*, 2017 WL 8793750, at *5, 8.  DOL's alleged breach of the Agreement does not revive his waived claims under Title VII or the Rehabilitation Act.  *See Wiley*, 329 F. App'x at 512 (stating that an alleged breach does "not revive . . . settled claims."); *Boone*, 2008 WL 4791541, at *2 (agreeing that employment claims arising prior to a settlement agreement were barred regardless of an alleged breach).

Because Plaintiff waived his claims for race and disability discrimination and for failure to provide reasonable accommodations by entering the Agreement, his claims should be dismissed for failure to state a claim.  *See Wiley*, 329 F. App'x at 512 (affirming district court's finding that the plaintiff could not assert previously settled claims); *Lee*, 2018 WL 6435635, at *2 (dismissing employment claims for failure to state a claim based on a settlement agreement).

**D.**     **Failure to State a Claim**

Defendants also argue that Plaintiff's retaliation claims under Title VII and the Rehabilitation Act related to the 2016 Job Posting should be dismissed because he has failed to plead an adverse employment action.  (doc. 20 at 12-14.)

Title VII and the Rehabilitation Act make it unlawful for employers to retaliate against an individual because he has opposed any practice made an unlawful employment practice by the relevant statutes, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the relevant statute.  *See* 42 U.S.C. § 2000e–3(a); 29 C.F.R. § 1614.101(b).  Retaliation claims under both Title VII and the Rehabilitation Act are

19

analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Higbie v. Kerry*, 605 F. App'x 304, 307–08 (5th Cir. 2015); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). A plaintiff establishes a *prima facie* case of retaliation by showing that: (1) she engaged in activity protected by Title VII or the Rehabilitation Act;[11] (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *See id.*[12]

Unlike employment discrimination claims, which require the adverse action be an "ultimate employment decision," retaliation claims are governed by a less stringent standard. *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Porter v. Houma Terrebonne Hous. Auth Bd. of Comm'rs*, 810 F.3d 940, 945-46 (5th Cir. 2015) (explaining that the standard is "less demanding" than an "ultimate employment decision" and retaliation claims can be based on incidents occurring outside the workplace) (citations omitted); *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 804 (5th Cir. 2018) ("The definition of an adverse employment action in the retaliation context is broader than in the discrimination context."). The adverse action underlying an actionable retaliation claim

---

[11] The filing of a charge of discrimination with the EEOC clearly satisfies the first element, and Defendants do not contend that Plaintiff failed to engage in a protected activity. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (explaining that "there can be no question that [the employee's] retaliation claims satisfy the first element of the analysis, filing an administrative complaint is clearly protected activity"); *Kebiro v. Walmart*, 193 F. App'x 365, 368 (5th Cir. 2006) (same).

[12] Although a plaintiff is not required to plead the *prima facie* case of retaliation at the motion to dismiss stage, he must plead sufficient facts on all of "the ultimate elements" of a retaliation claim to make his case plausible. *Jenkins v. State Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (citing *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (explaining that the *prima facie* elements for retaliation are helpful in analyzing the sufficiency of the complaint)); *see also Flores v. Select Energy Servs., LLC*, 486 F. App'x 429, 432 (5th Cir. 2012) ("The elements of a *prima facie* case are helpful, however, in framing what constitutes [a discrimination] claim."); *Avalon Residential Care Homes, Inc. v. City of Dallas*, No. 3:11-CV-1239-D, 2011 WL 4359940, at *8 (N.D. Tex. Sept. 19, 2011) (holding that proving the *prima facie* case of retaliation is sufficient, but not necessary, to survive a motion to dismiss).

is not limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting or compensation. *Porter*, 810 F.3d at 945-46. Instead, it includes employer actions that a reasonable employee would consider "materially adverse," "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57.

Although the standard is objective, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id*. at 69. Nevertheless, the retaliatory action must be "materially adverse" in order "to separate significant from trivial harms." *Id*. (citation omitted) (noting that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence"). To be clear, "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. at 67.

Here, Plaintiff alleges that in retaliation for filing his EEOC complaints, he was provided false and misleading information regarding the 2016 Job Posting. (doc. 11 at 5-6, 9, 12.) The emails attached with his questionnaire answers show that he inquired about the 2016 Job Posting, and he received a response stating that the job announcement was cancelled in April because it was filled through an internal reassignment. (*Id*. at 23-24.) On June 7, 2016, however, he received another email regarding the 2016 Job Posting, noting that he was interviewed the previous week due to another position becoming available for that posting, and stating that he would be notified once a final decision was reached. (*Id*. at 25.) He was specifically informed this position was for the 2016 Job Posting. (*Id*. at 26.) Although he contends that he was provided with false information about the posting, his allegations and the emails show that he did not suffer any materially adverse action regarding the 2016 Job Posting, as he was subsequently interviewed and considered for the position.

21

(*See id*. at 25-26.)  Any allegedly false or misleading information he received regarding the 2016 job posting was only a "minor annoyance," which does not constitute a materially adverse act.  *See Bulington*, 548 U.S. at 69.  Additionally, because he was interviewed for the same position based on his prior application to the 2016 Job Posting, he has failed to allege facts showing that he suffered any harm for the alleged retaliation.  *See id*. at 67 (recognizing that the law does not protect against retaliation for trivial harms, but only those that produce an injury or harm).

Because his allegations that he received false and misleading information about the 2016 Job Posting do not plead an adverse employment action for purposes of retaliation under Title VII or the Rehabilitation Act, his retaliation claims related to the 2016 Job Posting should be dismissed for failure to state a claim.  *See Smith v. Potter*, No. 3:07-CV-1509-P, 2008 WL 11347431, at *3-5 (dismissing retaliation claims with prejudice for failure to state a claim).

## IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. Courts, nonetheless, may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995),

or if it finds that the plaintiff has alleged his or her best case, *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). When a court "outline[s] in [its] opinion the deficiencies" of plaintiff's complaint and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*, 2001 WL 627600, at *2-*3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

Although Plaintiff submitted answers in response to a magistrate judge's questionnaire, which constitute an amendment to his complaint, it does not appear he has alleged his best case with regard to his breach of contract claim and his all of his retaliation claims against the Secretary of Labor under Title VII. It appears that he has alleged his best case as to his claims for race or disability discrimination or failure to provide reasonable accommodations because he waived those claims by entering the Agreement, however. Plaintiff should be accorded an opportunity to amend his complaint to sufficiently state a claim upon which relief can be granted for his retaliation claims and his breach of contract claim.

## V. RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days allotted for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED**, the Acting Secretary of Labor should be substituted as the defendant in this action for Plaintiff's employment claims, and Plaintiff's breach of contract claim and his retaliation claims related to the 2015 Job Postings should be **DISMISSED without prejudice**, and his remaining claims should be **DISMISSED with prejudice** for failure to state a claim.

If Plaintiff timely files an amended complaint, however, the motion to dismiss should be

**GRANTED IN PART**, the Acting Secretary of Labor should be substituted as the defendant in this action for Plaintiff's employment claims, the remainder of the motion should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 16th day of August, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

24